UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DOLPHIN ASSOCIATES III, LLC and<br>DONALD T. NETTER,<br><br>Defendants. | CIVIL ACTION NO. |

# COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission") alleges the following against Defendants Dolphin Associates III, LLC ("Dolphin") and Donald T. Netter ("Netter"):

## SUMMARY OF THE ACTION

1. From 2016 to the present, Defendants Dolphin, an investment adviser, and Netter, its principal, defrauded their private fund client, Dolphin Limited Partnership III, L.P. ("Fund") and its investors, and breached their fiduciary duties to the Fund, by improperly withholding the investors' funds, failing to provide required financial statements, and overcharging them.

2. Through their management of the Fund, Defendants employed a fraudulent scheme and engaged in a course of business that operated as a fraud or deceit on their client and its investors in these ways:

3. **Failing to Honor Investor Redemption Requests and Misrepresenting the Reasons Why:** First, Defendants engaged in a fraudulent scheme and engaged in a course of business that operated as a fraud or deceit on their clients by improperly suspending investor

withdrawals and failing to honor valid investor redemption requests. Throughout this scheme, Defendants made false and misleading statements about the suspension of withdrawals and failed to disclose conflicts of interest, or potential conflicts of interest, associated with their decision to suspend withdrawals. By engaging in this scheme and course of business, Defendants have violated and continue to violate Sections 206(1), (2), and (4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8 thereunder.

4. **Failing to Obtain or Provide Audited and Unaudited Financial Statements:** Second, Defendants engaged in a transaction, practice, or course of business that operated as a fraud or deceit on the Fund by failing to obtain and deliver required annual audits and quarterly financial reports to investors. By doing so, Defendants have violated and continue to violate Section 206(2) of the Advisers Act.

5. **Overcharging Management Fees:** Third, Defendants engaged in a transaction, practice, or course of business that operated as a fraud or deceit on the Fund by failing to properly calculate management fees, resulting in overcharging the Fund by about $41,000. By doing so, Defendants have violated and continue to violate Sections 206(1) and 206(2) of the Advisers Act.

6. Based on these violations, the Commission seeks:

   a. Entry of permanent injunctions enjoining Defendants from violating Sections 206 (1), (2), and (4) of the Advisers Act and Rule 206(4)-8 thereunder;

   b. Appropriate civil monetary penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

   c. Disgorgement of Defendants' ill-gotten gains, pursuant to Sections 21(d)(5) and 21(d)(7) of the Securities Exchange Act of 1934, plus prejudgment interest;

    d.    Entry of an Order requiring Defendants to (i) within 60 days of the final judgment, process all investor withdrawals requests received by Dolphin since 2016 and issue withdrawals to such investors, subject to the audit holdback provisions of the Fund's Limited Partnership Agreement; and (ii) within 120 days of the final judgment, certify compliance with the above final judgment;

    e.    Entry of a permanent injunction restraining and enjoining Netter from directly or indirectly, acting as or being associated with any investment adviser; and,

    f.    award any other relief that the Court deems just and proper.

## **DEFENDANTS**

7.    **Dolphin Associates III, LLC**, is a Delaware limited liability company based in Greenwich, Connecticut.  Dolphin has never been registered with the Commission.  Dolphin filed an initial Form ADV as an exempt reporting adviser ("ERA") on June 28, 2012, and currently maintains status as an ERA.

8.    Dolphin serves as the investment adviser and general partner to a privately offered investment fund, Dolphin Limited Partnership III, L.P.  Dolphin is also an investor in the Fund.

9.    **Donald T. Netter**, age 63, is a resident of Greenwich, Connecticut, and is the founder and Senior Partner of Dolphin.  He is also an investor in the Fund.  Mr. Netter has never held licenses relevant to the securities or accounting industries.  Netter is Dolphin's only employee.

10.    Netter and Dolphin are engaged in the business of advising others as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.  They receive compensation for these services.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this action pursuant to Sections 209(d) and 214 of the Advisers Act, 15 U.S.C. §§ 80b-9(d) and 80b-14.

12. The Commission seeks permanent injunctions and disgorgement pursuant to Section 209(d) of the Advisers Act, 15 U.S.C. § 80b-9(d). The Commission seeks the imposition of civil penalties pursuant to Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e).

13. The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants reside and transact business in this District, and many acts and omissions constituting the alleged violations occurred, in whole or in part, in this District.

14. Defendants directly or indirectly used the mails or the means or instruments of transportation or communication in interstate commerce in connection with their business as investment advisers and the conduct described in this Complaint.

15. Unless enjoined, Defendants will continue to engage in the securities law violations alleged here, or in similar conduct that would violate the federal securities laws.

## DEFENDANTS' ONGOING FRAUDULENT COURSE OF CONDUCT

16. Defendants are engaged in an ongoing course of conduct that includes multiple breaches of their fiduciary duties to their client (the Fund) and their responsibilities to investors in that Fund, as well as misleading misrepresentations and fraudulent omissions.

17. This course of conduct includes failing to honor redemption requests by investors and return invested capital to those investors and misrepresenting the reasons for those failures; improperly calculating management fees and overcharging the Fund for management services; and failing to obtain required audits and quarterly financial statements and to distribute them to investors.

4

**Failure to Honor Redemption Requests and Investor Withdrawals**

18.     Defendants improperly suspended investor withdrawals from the Fund and refused to honor redemption requests by investors, keeping investors invested in the Fund well after they were entitled to the return of their invested money.

19.     Section 4.7 of the Fund's Limited Partnership Agreement ("LPA"), which was distributed to all investors by Defendants, permitted Defendants to create "Designated Investments."  Designated Investments "are not publicly traded or otherwise have limited liquidity or which the General Partner [ ] believes in good faith are likely to become private or have limited liquidity…."

20.     In 2015, Defendants classified two Fund holdings (QUMU Corporation ("QUMU") and Point Blank Solutions, Inc. ("PBSOQ")) as "Designated Investments" under Section 4.7 of the LPA.  Doing so segregated those investments from the Fund's main portfolio and placed them in a "side pocket," excluding them from investor withdrawals for up to four years.  Defendants stated they were making this classification because the investments had limited liquidity and trading restrictions.

21.     For QUMU, the trading restrictions resulted from the fact that Netter had been appointed to the company's board of directors.

22.     As for PBSOQ, the stock ceased to be publicly traded, and the Fund's interest in it became bound up in an illiquid trust.

23.     Under Section 4.7 of the LPA, Dolphin could side pocket those two investments and exclude them from investor withdrawals for up to four years, until 2019.

24.     Three Fund investors made several redemption requests starting in August 2016 and continuing through December 2021.  Defendants have continually failed to honor these requests or to take any necessary steps to allow them to be honored.

25.     Towards the end of 2016, Defendants improperly suspended all investor withdrawals from the Fund.  In a letter to Fund investors dated November 30, 2016, Dolphin and Netter stated that the reason for the suspension was "the concentration of several core positions" including QUMU, "and also based upon the concentrated holdings of the Partners."  The letter claimed that the suspension had been ordered under Section 6.6(c) of the LPA.

26.     Section 6.6(c) of the LPA gives Dolphin authority to suspend withdrawals altogether under specific circumstances, including, *inter alia*, "a state of emergency or other unusual or extraordinary circumstances" that makes it difficult to dispose of a substantial part of, or fairly value, the Fund's assets, or that "might seriously prejudice the Partners."

27.     Later communications with Fund investors make clear that, in fact, the suspension was due to the Fund's positions in QUMU and PBSOQ, the two securities that Defendants had already side-pocketed.  In the Fund's audited financial statements for 2017 and 2018, Dolphin stated that the suspension of withdrawals would last until QUMU and PBSOQ were "appropriately resolved and reallocated back to the Partnership."

28.     The status of QUMU and PSBOQ, which had already been side-pocketed, would not have prevented the Fund from selling other portfolio assets to at least partially satisfy the redemption requests from the Fund's investors.

29.     And, despite their representations, neither Dolphin nor Netter took any steps to resolve and reallocate back to the Partnership the investments in QUMU and PBSOQ.

30.     Between 2016 and 2019, after the suspension of withdrawals was instituted, Netter told at least one Fund investor that Dolphin was winding down the Fund, refraining from making new investments, and selling positions to satisfy redemption requests.  None of these representations were true.  In fact, Netter and Dolphin used the Fund's available cash to make

new investments.

31. Defendants lacked the authority under the LPA to continue to maintain QUMU and PBSOQ as Designated Investments (as QUMU was not illiquid or subject to trading restrictions and PBSOQ had been fully liquidated). And the side pocket provision of the LPA limited the Designated Investments classification to a four-year period. Nor did Defendants have the authority to suspend withdrawals completely. Yet Defendants never reallocated QUMU and PBSOQ back to the Fund, lifted the suspension of withdrawals, or honored the redemption requests.

32. Defendants' management of the Designated Investments showed the falsity of their representations about the limited liquidity and trading restrictions on those investments:

  a. In May 2018, Netter resigned from the Board of Directors of QUMU. This resignation cured any trading restrictions on that stock because of the board seat.

  b. Between June 2020 and September 2021, Dolphin actively traded QUMU stock on behalf of the Fund. Throughout this period, there was significant daily trading volume (averaging over 200,000 shares per day) relative to the Fund's holdings of QUMU (approximately 500,000 shares). This volume shows that the stock was not illiquid, as Defendants had represented.

  c. During that time, Netter also traded QUMU stock in his personal account.

  d. In December 2021, Dolphin bought additional securities of an existing investment held by the Fund, demonstrating Defendants' failure to work to resolve any purported restrictions on honoring investors' withdrawal and redemption requests.

  e. In 2021 and 2023, the Fund received cash from some of the Designated Investments, yet still failed to return that cash to investors, despite their redemption requests.

 f. The Fund ceased holding PBSOQ stock in December 2021, and ceased holding QUMU shares in February 2023. Yet Dolphin and Netter continued their suspension of withdrawals and refused to honor the investors' redemption requests. The Fund's 2018 audited financial statement, provided to Fund investors in April 2023, included the false representation that the resolution of the QUMU and PBSOQ investments continued to require the suspension of withdrawals.

33. In other words, Defendants continued to hold liquid and unrestricted existing investments with a view of generating investment returns, did not sell investments to raise cash to satisfy withdrawals requests, and invested portions of cash held by the Fund in equity securities rather than distributing it to redeeming investors. Nor did Defendants accurately describe the status of those investments, the reasons for the suspension of withdrawals, or its lack of efforts to honor those withdrawals.

34. Through these failures and misrepresentations, Defendants breached their fiduciary duty to the Fund, their responsibilities to their investors, and the anti-fraud provisions of the Advisers Act.

**Failure to Disclose Conflicts of Interest Relating to Netter's Securities Trading**

35. As part of their fraudulent scheme, Dolphin and Netter failed to disclose conflicts of interest between the Fund and Netter resulting from Netter's personal investment activities.

36. Netter bought and sold large quantities of several of the same small-cap stocks that the Fund owned, including QUMU, Telephone and Data Systems Inc., Dallas News Corporation, CVR Partners L.P., and United States Cellular Corporation.

37. Netter personally had long-term holdings in each of these stocks.

38. With QUMU, in October and November 2019, Netter sent "activist" letters on

behalf of the Fund to company management advocating corporate actions consistent with long-term investment.

39. Netter and the Fund jointly filed a beneficial ownership report for Dallas News Corporation with the Commission due to, among other things, the size of their combined ownership together with the relatively small capitalization of the companies (*e.g.*, Dallas News Corporation). As a result, Netter and the Fund had a combined ownership of the company's Series A stock greater than 5%.

40. Netter's holdings of significant, long-term positions in the same securities as the Fund created an actual or potential conflict of interest that Netter's trading could diverge from the Fund's interests. For example, Netter had an incentive to prevent the Fund from selling its shares, which could have caused prices to decline, or to trade his own stock in advance or in lieu of the Fund's.

41. These actual or potential conflicts were particularly relevant once the Fund was obligated to sell or otherwise relinquish securities to satisfy Fund investors' withdrawal requests.

42. Additionally, Netter personally benefited from Fund's activist efforts. During the period Netter was personally invested in QUMU and Dallas News Corporation, the Fund paid over $90,000 in legal expenses in connection with activist efforts related to these companies. Netter did not share in those expenses or disclose to investors his conflicts that resulted from his personal investments in QUMU and Dallas News Corporation.

43. The Proposed Defendants never disclosed to the Fund or its investors that Netter would make the same investments alongside the Fund.

**Failure to Obtain Required Audits and Quarterly Financial Statements**

44. Section 8.2 of the Fund's LPA requires Dolphin to prepare and deliver audited

financial statements prepared by an independent certified public accountant to Fund investors "as soon as practicable after the end of each fiscal year," and to prepare and deliver unaudited financial statements to Fund investors generally within 45 days of the end of each quarter.

45. Between the end of fiscal year 2017 and June 2019, when the Fund had no Fund administrator, Defendants did not maintain any Fund accounting.

46. Starting in June 2019, Dolphin had a new fund administrator prepare unaudited financial statements for fiscal year 2018.

47. After fiscal year 2018, Dolphin has maintained no accounting records.

48. Defendants failed to obtain or deliver in a timely manner an audit for fiscal year 2018. Although Fund investors eventually received this audit, it was not completed or delivered to investors until April 2023, more than four years after it was due to them.

49. The delay in the preparation and delivery of the 2018 audit resulted from Dolphin and Netter's delay in signing an engagement letter with the auditor until 2021, two years after the audits needed to be delivered to investors. Then Dolphin and Netter caused additional delay by failing to give the auditor the records it needed to complete the audit.

50. Defendants have since failed to obtain or deliver unaudited quarterly financial statements to Fund investors for any period from fiscal year 2019 through the present. Dolphin has not engaged any accounting firm to conduct audits for those time periods.

### Overcharge of Management Fees

51. Defendants overcharged the Fund for management fees from December 2017 through June 2022.

52. After the departure of the Fund's fund administrator, Defendants calculated the management fees due to Dolphin from the Fund.

53.     Dolphin and Netter understood how to calculate the management fees in accordance with the LPA.  But they failed to accurately calculate these fees, instead relying on rough approximations to determine what to charge the Fund.

54.     The amounts that Dolphin, through Netter, charged the Fund were largely round numbers in the thousands.

55.     As a result, from the first quarter of fiscal year 2018 through the third quarter of fiscal year 2022, Defendants overcharged the Fund by about $41,000, and collected that overage from the Fund.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### FRAUDULENT SCHEME CONCERNING REDEMPTIONS

**Fraudulent Conduct by Investment Advisers
In Violation of Sections 206(1) and 206(2) of the Advisers Act
(Dolphin, Mr. Netter)**

56.     The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 55 **Error! Reference source not found.**as if set forth fully here.

57.     At all relevant times, Dolphin and Netter were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].  Both Dolphin and Netter were in the business of providing investment advice concerning securities for compensation.  Netter was also an investment adviser due to his ownership, management, and control of Dolphin.

58.     As set forth above, Dolphin and Netter are employing a fraudulent device, scheme, or artifice to defraud the Fund through their retention of funds due to investors, their failure to honor redemption requests and investor withdrawals, their false and misleading material statements and fraudulent omissions concerning those requests and their reasons for

retaining the money, and their failures to disclose the actual or potential conflicts involved.

59. Dolphin and Netter, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly or recklessly have employed or are employing devices, schemes, or artifices to defraud clients or potential clients.

60. As described above, Dolphin and Netter, through their retention of funds due to investors, their failure to honor redemption requests and investor withdrawals, their false and misleading statements and fraudulent omissions concerning those requests and their reasons for retaining the money, and their failures to disclose the actual or potential conflicts involved, engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon the Fund.

61. Dolphin and Netter, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly, recklessly, or negligently, have engaged or are engaging in transactions, practices, and courses of business which operate as a fraud or deceit upon a client or prospective client.

62. By engaging in the conduct described above, Defendants have violated, and unless enjoined, will continue to violate Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)].

**SECOND CLAIM FOR RELIEF**
**FRAUDULENT CONDUCT IN OVERCHARGING MANAGEMENT FEES**

**Fraudulent Conduct by Investment Advisers**
**In Violation of Sections 206(1) and (2) of the Advisers Act**
**(Dolphin, Mr. Netter)**

63. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through **Error! Reference source not found.**55 as if set forth fully here.

64. At all relevant times, Dolphin and Netter were "investment advisers" within the

12

meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)]. Both Dolphin and Netter were in the business of providing investment advice concerning securities for compensation. Netter was also an investment adviser due to his ownership, management, and control of Dolphin.

65. As detailed above, Defendants fraudulently overcharged management fees during their management of the Fund.

66. Dolphin and Netter, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly or recklessly have employed or are employing devices, schemes, or artifices to defraud clients or potential clients.

67. Dolphin and Netter, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly, recklessly, or negligently, have engaged or are engaging in transactions, practices, and courses of business which operate as a fraud or deceit upon a client or prospective client.

68. By engaging in the conduct described above, Defendants have violated, and unless enjoined, will continue to violate Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)].

### THIRD CLAIM FOR RELIEF
### FRAUDULENT CONDUCT IN FAILING TO
### OBTAIN AND PROVIDE AUDITED AND UNAUDITED FINANCIAL STATEMENTS

#### Fraudulent Conduct by Investment Advisers
#### In Violation of Section 206(2) of the Advisers Act
#### (Dolphin, Mr. Netter)

69. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through **Error! Reference source not found.**55 as if set forth fully here.

70. At all relevant times, Dolphin and Netter were "investment advisers" within the

13

meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].  Both Dolphin and Netter were in the business of providing investment advice concerning securities for compensation.  Netter was also an investment adviser due to his ownership, management, and control of Dolphin.

71. As detailed above, Defendants, in failing to obtain required audits and financial statements, engaged in transactions, practices, and courses of business which operated as a fraud or deceit upon their advisory clients.

72. Dolphin and Netter, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly, recklessly, or negligently, have engaged or are engaging in transactions, practices, and courses of business which operate as a fraud or deceit upon a client or prospective client.

73. By engaging in the conduct described above, Defendants have violated, and unless enjoined, will continue to violate Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6 (2)].

**FOURTH CLAIM FOR RELIEF**
**FRAUDULENT MISREPRESENTATIONS**
**ABOUT SUSPENSION OF WITHDRAWALS**

**Fraudulent Conduct by Investment Advisers to a Pooled Investment Vehicle**
**In Violation of Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder**
**(Dolphin, Mr. Netter)**

74. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through **Error! Reference source not found.**55, as if set forth fully here.

75. At all relevant times, Dolphin and Netter were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].  Both Dolphin and Netter were in the business of providing investment advice concerning securities for compensation.  Netter was also an investment adviser due to his ownership, management, and

14

control of Dolphin.

76. At all relevant times, the Fund was a pooled investment vehicle, as defined in Advisers Act Rule 206(4)-8(b) [17 C.F.R. § 275.206(4)-8(b)].

77. As set forth above, Dolphin and Netter made material misstatements to investors in the Fund concerning the suspension of withdrawals.

78. Dolphin and Netter, acting intentionally, knowingly, recklessly, or negligently, while acting as investment advisers to a pooled investment vehicle, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, engaged in acts, practices, or courses of business which were fraudulent, deceptive, or manipulative. Defendants also made untrue statements of material facts and/or omitted to state a material fact necessary to make the statements made, in the light of the circumstances in which they were made, not misleading, to investors or prospective investors in the pooled investment vehicles, and otherwise engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the pooled investment vehicles.

79. By engaging in the conduct described above, Defendants have violated, and, unless enjoined, will continue to violate Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission requests that this Court:

A. Enter permanent injunctions enjoining Defendants from violating Advisers Act Sections 206(1), (2) and (4) [15 U.S.C. § 80b-6(1), (2) and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

B. Order Defendants to pay appropriate civil monetary penalties pursuant to Section

209(e) and (f) of the Advisers Act [15 U.S.C. § 80b-9(e) & (f)];

  C. Require Defendants to disgorge their ill-gotten gains, pursuant to Sections 21(d)(5) and 21(d)(7) of the Securities Exchange Act of 1934, plus prejudgment interest;

  D. Order Defendants to (i) within 60 days of the final judgment, process all investor withdrawals requests received by Dolphin since 2016 and issue withdrawals to such investors, subject to the audit holdback provisions of the Fund's Limited Partnership Agreement; and (iii) within 120 days of the final judgment, certify compliance with the above final judgment;

  E. Enter a permanent injunction restraining and enjoining Netter from directly or indirectly, acting as or being associated with any investment adviser.  This injunction shall not prevent Netter from being a client of an investment adviser, and Netter may continue to be associated with Dolphin, and its affiliates, to the extent necessary to wind down the operations of the private funds managed by Dolphin, and its affiliates, and to assist with the administration of investor withdrawals from the Fund, for a period of six months from entry of the Court's order. For purposes of this paragraph, a person is associated with an investment adviser if such person is a partner, officer, or director of such investment adviser (or performs similar functions), or directly or indirectly controls or is controlled by such investment adviser, including any employee of such investment adviser;

  F. Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and,

  G. Award any other relief that the Court deems just and proper.

        Respectfully submitted,

        By: /s/ Marc J. Jones
        Marc J. Jones (Mass. Bar No. 645910)

                                                Senior Trial Counsel
                               Mark S. Audet (Mass. Bar No. 691009)
                                         Enforcement Counsel
                             Colin D. Forbes (N.Y. Bar No. 4664264)
                                          Assistant Director

**ATTORNEYS FOR PLAINTIFF**
**SECURITIES AND EXCHANGE COMMISSION**
33 Arch St., 24th Floor
Boston, MA 02110
Telephone: (617) 573-8900
Jones Direct Dial: (617) 573-8947
jonesmarc@sec.gov

DATED: December 20, 2024