**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Securities and Exchange Commission,<br><br>        Plaintiff,<br><br>v.<br><br>Dolphin Associates III, LLC and Mr. Netter,<br><br>        Defendants. | Civil No. 3:24-cv-02022 (VDO)<br><br><br><br><br>June 23, 2026 |

**RULING ON PLAINTIFF'S MOTION FOR DISCOVERY
SANCTIONS and DEFENDANT MR. NETTER'S REQUEST FOR AN
EVIDENTIARY HEARING**

Plaintiff SEC seeks an order imposing sanctions on Defendant Mr. Netter for violating the Court's March 17, 2026 Discovery Order (ECF No. 87), including his failure to complete his document production, to certify the adequacy and completion of that production, and to comply with orders from the Court concerning his interrogatory responses. ECF No. 97. Defendant Mr. Netter, appearing *pro se*, filed an objection and request for an evidentiary hearing. ECF No. 101.

For the reasons that follow, Plaintiff's Motion for Sanctions is GRANTED. ECF No. 97. Defendant Mr. Netter's request for an evidentiary hearing is DENIED. ECF No. 101.

**A. BACKGROUND**

The SEC filed this case against Defendants Dolphin Associates III, LLC and Donald Netter on December 20, 2024. ECF No. 1. It is alleged in this case that Defendants are investment advisers who violated their fiduciary duties to their private fund, Dolphin Limited Partnership III, L.P. ("Fund")—and harmed Fund investors—through repeated breaches of the Fund's governing documents, and various other fraudulent conduct. Defendants deny wrongdoing. Initially Defendant Mr. Netter was represented by counsel. ECF Nos. 15 and 16 (Notice of Appearances by

1

Brian Spears and Leslie Cahill on behalf of Donald Netter). The SEC served its Interrogatories on Mr. Netter through his prior counsel on July 28, 2025. ECF No. 73-1, Ex. 1. On September 29, 2025, Mr. Netter through his prior counsel sent responses to the SEC's Interrogatories. ECF No. 73-1, Ex. 2. On October 6, 2025, Mr. Netter's counsel moved to withdraw (ECF No. 53) and the motion was granted on October 9, 2025 (ECF No. 57). As part of its Order, the Court warned that "Defendant is on notice, that the Court will not permit delay or disruption of the proceedings." ECF No. 57. The Court, based in part on arguments that Mr. Netter would be working to "identify and engage a non-conflicted, available and capable counsel", (ECF No. 58, at ¶ 6) granted Dolphin Associates III, LLC's Motion for Extension of Time. ECF No. 63. On November 12, 2025, Mr. Netter filed his *pro se* appearance. ECF No. 68. Since the beginning of December, 2025, counsel for the SEC made efforts to meet and confer with Mr. Netter regarding the deficient discovery responses. ECF No. 92 at 5:9-25. From the SEC's standpoint, it had exhausted its ability to get from Mr. Netter "basic stuff." *Id.* at 7:15-16.

On February 19, 2026, the SEC filed a Motion to Compel outstanding discovery responses from Defendant Mr. Netter. ECF No. 73 (Amended at ECF No. 84 to add page 10). Defendant Mr. Netter filed a response on March 12, 2026. ECF Nos. 85, 83 (revised). The SEC maintained that the responses were deficient in several ways, including that the responses (1) were not signed under oath by Mr. Netter, (2) were missing an Exhibit A, a chart of accounts referenced in the responses, (3) were deficient in that Mr. Netter failed to answer certain interrogatories, by objecting and referring the SEC to his co-Defendant's responses. ECF No. 73.

**The March 16, 2026 Hearing and the March 17, 2026 Order**

Discovery closed on February 28, 2026. A hearing on the Motion to Compel was held on March 16, 2026. ECF Nos. 86, 92 (transcript).

2

During the hearing the Court asked the parties if they would like another opportunity to confer before arguing the merits of the motion. ECF No. 92 at 4:16-21 (transcript of oral argument on March 16, 2026). Plaintiff's counsel set forth the timeline of emails and attempts to communicate with Mr. Netter's prior counsel and Mr. Netter prior to filing the Motion to Compel. *Id.* at 5:2-7:21 (September 29 and 30, 2025 emails; December 5, 15, 19, 2025 emails, unreturned calls, and questions during Mr. Netter's February 5, 2026, deposition to get responses and production of discovery materials). On this record, the Court concluded that Defendant Mr. Netter was provided with ample opportunity through the meet and confer process to narrow the issues and/or provide the outstanding discovery sought by the SEC. *See id.* at 3:11-7:21; ECF No. 87 (March 17, 2026 Discovery Order); ECF No. 81 (advising the parties that if they are able to resolve the issues raised in the Motion to Compel prior to the scheduled oral argument the hearing may be cancelled). Oral argument was held on March 16, 2026, and Mr. Netter was provided with an opportunity to be heard.

**March 17, 2026, Order**

Following the March 16th oral argument, the Court entered the following Order on March 17, 2026:

**Answers to Interrogatories**

The Court ordered as follows:

a. Defendant Mr. Netter shall answer Interrogatories 6-9 and 11. These answers must fully address each part of the SEC's Interrogatories, and may not rely solely on references to co-Defendant Dolphin Associates IIIs answers.

b. Defendant Mr. Netter shall provide a copy of the "Exhibit A" referenced in his Interrogatory answers, containing all information promised in each Interrogatory answer that references that Exhibit (interrogatories 3 and 5).

c. For each Interrogatory answer in which Defendant Mr. Netter references documents produced to the SEC, Defendant Mr. Netter shall reference by document (Bates) number each document intended to be incorporated in his answer, pursuant to Fed. R. Civ. P. 33(d). Defendant Mr. Netter shall amend his

responses to interrogatories 2-8 and 10 to include this information. Defendant Mr. Netter may not withhold some or all of the information requested on the grounds that he believes that it is already in the SEC's possession.

d. Defendant Mr. Netter shall answer in full Interrogatory No. 10.

e. Defendant Mr. Netter shall provide a copy of his Interrogatory Responses signed under oath, consistent with Fed. R. Civ. P. 33(b).

**Document Production**

The Court ordered Mr. Netter to:

a. produce all documents responsive to Document Requests Nos. 7-9 and 12-13.

b. attest in writing and under the pains and penalties of perjury that: (i) He has completed all required searches for responsive documents; and (ii) All responsive, non-privileged documents within his possession, custody, or control have been produced by him to the SEC by March 31.

c. Produce a privilege log by that date if "documents are being withheld on the basis of privilege, a privilege log shall be produced by Mr. Netter to the SEC that complies with Fed. R. Civ. P. 26(b) and D. Conn. L. Civ. R. 26(e).

ECF No. 87.

As to Mr. Netter's compliance responding to the outstanding Interrogatories, Plaintiff reports that Mr. Netter provided attested-to responses to Interrogatories 6-9 and 11 and Exhibit A.[1] ECF No. 97 at 5-6. However, Plaintiff maintains that there are "several holes in [Mr.] Netter's responses." *Id.* at 5. During a meeting on April 7, 2026, "[Mr.] Netter suggested that he would provide supplemental responses." *Id.* at 5-6. Mr. Netter has not provided supplemental responses. Plaintiff maintains the production is not complete and that "broad references to this volume of documents do not conform with Fed. R. Civ. P. 33[d]." *See id.* at 6 (detailing deficiencies in response to Interrogatory No. 9, Exhibit A, Interrogatory No. 6). Moreover, Mr. Netter failed to provide account numbers in Exhibit A instead referencing documents that the Commission

---

[1] Plaintiff states that "[w]hile the attestation provided only accompanied revised responses to Interrogatories 6-9 and 11, [Mr.] Netter also produced a signature page from when he was represented by counsel (though that page is not signed by counsel). It is the Commission's belief that, between these two documents, [Mr.] Netter intends to provide all of his responses under the pains and penalties of perjury. If not, [Mr.] Netter should inform the Commission." ECF No. 97, n. 4.

obtained from other sources, and referenced tens of thousands of pages of documents without the specificity required to enable Plaintiff to locate and identify the document as readily as Mr. Netter could pursuant to Fed. R. Civ. P. 33(d)(1). *Id.* at 6, n. 5.

As to the document production compliance, Plaintiff states that Mr. Netter has produced *some* of the documents, but has not completed his production. *Id.* at 2-5 (emphasis added). Mr. Netter made no attestation. *Id.* at 2. And, Mr. Netter has not produced a privilege log. *Id.*

**<u>Fed. R. Civ. P. 37(b)(2)</u>**

During the hearing, in his filings and communications to counsel for the SEC, Mr. Netter deflects responsibility in a number of ways, including by asserting attorney-client privilege as a basis for objection, pointing to his co-Defendant, citing to his prior counsel's work, or the fact that he does not have counsel. *See* ECF No. 92 at 8:23-9:1 (Netter: "I could not find a UPS letter of their motion to compel. I could not find an email with respect to the motion to compel or seeking to meet and confer."); *id.* at 10:19-24 (Netter arguing that he "tried to get a hold of [prior counsel]. I've not been able to do that. And the question I really . . . is an attorney-client question as to what he intended to do with the government . . . in terms of what we provide to them. But I have reached out to him several times."); *id.* at 12:13-21 (Netter arguing that "the motions to compel or to compel . . . certain areas, interrogatories 6 through 9,. . . and 11 relate really to Dolphin III, not to me, individually. . . . And at the depositions, I responded to them as the management of Dolphin III and gave them really the answer to them or the outlines to them."); *id.* at 14:10-14 (Netter: "When the interrogatories were done, they were done with counsel. My signature page was given to counsel. Exhibit A was available. And I don't know why it wasn't presented. And I need to speak to counsel to find out why not."); *id.* at 18:22-19:5 (Netter arguing that "many of the interrogatories directed at me—really deal with Dolphin [III] . . . And Dolphin III is represented by counsel. So it seems an end-around the attorney-client privilege, Your Honor, to have interrogatories that deal

strictly with Dolphin III not being directed to Dolphin III, which, by the way, has the documents, Your Honor."); *id.* at 15:15-16 (Netter: "But I was represented by counsel. I gave all this information to counsel."); *id.* at 21:16-19 (Netter: "Why doesn't this Court order the U.S. Government to take those interrogatories and redirect them to Dolphin III, which is represented by counsel and has all of the documents?"); *id.* at 23:10-11 (Netter: "I think [Interrogatory number 6] should be answered by Dolphin III that has counsel and has the documents[.]"); *id.* at 32:11-13 (Netter: "Well, I will say this, that what was responded to in discovery and the interrogatories was done with counsel, not by me."); ECF No. 73-5, at 1 ("Defendant Netter offers that the original interrogatory responses were created with counsel and the SEC's further inquiry appears to seek to invade the attorney client privilege."); ECF No. 101 at 2 (Mr. Netter raising an attorney work product privilege and asking "the Commission to confer with counsel for DA III"); *id.* at 4 ("Netter did not omit 2025 legal expenses from his revised Interrogatory response. Rather, 2025-2026 invoices were presented to DA III's counsel after [t]he Commission's current claim was filed Monday, May 4, 2026."); *id.* at 6 (Netter arguing that "[r]elevant documents to determine payment of expenses by non-Fund III entities was available to the Commission well before March 31, 2026 by way of documents supplied by Netter's prior counsel and subpoenas. [T]here simply is no injury here."); *id.* at 8 ("Netter is positioned to make the certification as this court ordered"); *id.* at 11 ("Netter possesses no bates stamped documents; they are held by counsel for DA III, South Dakota entities and Netter's former counsel."); *id.* ("Netter is ready to make the certification with respect to document requests directed at Netter."); *id.* at 12 ("[I]t is impractical and unworkable for Netter to certify what counsel determined to produce from its collection and what was produced to the Commission."); *id.* (arguing that the Commission "appears to conflate how Netter answers [] Interrogatories with his production of documents. Netter and prior counsel produced responsive

documents. . . DA III's counsel produced responsive documents. . . Netter complied with his individual document request.").

It appears to the Court that Mr. Netter's decision to proceed *pro se* has been part of his strategy to attempt to avoid his individual discovery obligations and provide a rationale for violating this Court's Order. At the hearing on the Motion to Compel, the Court advised Mr. Netter, that such strategy would not work and he was repeatedly advised that continued failure to meet his discovery obligations under the Federal Rules of Civil Procedure could result in the imposition of sanctions, including but not limited to "an adverse instruction", "monetary sanctions", and/or entry of "default." ECF No. 92 at 33:5-35:20.

The Order also provided Mr. Netter with written notice regarding the possible imposition of sanctions for failure to comply with his discovery obligations, pursuant to Fed. R. Civ. P. 37(b)(2).[2] ECF No. 87.

---

[2]     The Order states,

Fed. R. Civ. P. 37(b)(2) provides, in pertinent part, that when "a party fails to obey an order to provide or permit discovery," the court may sanction that party by, among other things "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims"; "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; striking pleadings in whole or in part"; "staying further proceedings until the order is obeyed"; "dismissing the action or proceeding in whole or in part"; "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2). "The imposition of sanctions under Rule 37 is within the discretion of the district court and a decision to dismiss an action for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988). "[A]ll litigants, including *pro ses*, have an obligation to comply with court orders," *Minotti v. Lensink,* 895 F.2d 100, 103 (2d Cir. 1990), and failure to comply may result in sanctions, including dismissal with prejudice." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). "A district court has broad power to impose Rule 37(b) sanctions, in response to abusive litigation practices." *Friends of Animals Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 334 (2d Cir. 1997); *Proctor v. Poole*, 233 F.R.D. 323, 325 (W.D.N.Y. 2006) (warning *pro se* litigant about the

### B. STANDARD OF REVIEW

"A district court's broad discretion to manage discovery comes with correspondingly broad discretion to impose sanctions for abusing the discovery process." *Brik v. Lavanco*, No. 23-CV-3507 (AMD) (SDE), 2026 WL 843255, at *2 (E.D.N.Y. Mar. 5, 2026), *report and recommendation adopted*, No. 23-CV-3507 (AMD) (SDE), 2026 WL 809768 (E.D.N.Y. Mar. 24, 2026), *adhered to*, No. 23-CV-3507 (AMD) (SDE), 2026 WL 927557 (E.D.N.Y. Apr. 6, 2026) (citing *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 545 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 822 (2024). ("Rule 37 gives a district court the authority to impose 'just' sanctions on a party who fails to comply with a discovery order.") (quoting Fed. R. Civ. P. 37(b)(2)(A))).

Federal Rule of Civil Procedure 37(b)(2) authorizes courts to impose sanctions on parties that fail to comply with discovery orders. The rule provides that if "a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further *just* orders." Fed. R. Civ. P. 37(b)(2)(A) (emphasis added). The types of sanctions include any of the orders listed in Federal Rule of Civil Procedure 37(b)(2)(A)(i) through (vi). Fed. R. Civ. P. 37(d)(3). Among the sanctions authorized under Rule 37(b)(2)(A) for failure to obey a discovery order is an order "directing that the matters embraced in the order or other designated facts be taken as established . . . as the prevailing party claims" Fed. R. Civ. P. (b)(2)(A)(i); "prohibiting

---

consequences of not attending a scheduled deposition and failing to respond to a motion to dismiss). "*Pro se* litigants, though generally entitled to 'special solicitude' before district courts, *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks omitted), are not immune to dismissal as a sanction for noncompliance with discovery orders." *Agiwal*, 555 F.3d at 302 and Fed. R. Civ. P. 37(C). In addition to the available sanctions under Fed. R. 37(b)(2), "the court must order the disobedient party, . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." The parties are on notice.

ECF No. 87.

the disobedient party . . . from introducing designated matters in evidence" Fed. R. Civ. P. (b)(2)(A)(ii); and "striking pleadings in whole or in part[.]" Fed. R. Civ. P. (b)(2)(A)(iii). *See United States v. Veeraswamy*, 350 F.R.D. 355, 362 (E.D.N.Y. 2025) (citing cases).

Courts look to the four *Agiwal* factors when considering a motion for sanctions: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal*, 555 F.3d at 302–03 ("the *Agiwal* factors"). "Willfulness is typically inferred from violation of multiple court orders." *Brik,* 2026 WL 843255, at *2 (citing *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 288 (S.D.N.Y. 2024)). A district court's imposition of sanctions under Rule 37, including dismissal, is reviewed for an abuse of discretion.  *Agiwal*, 555 F.3d at 302.

## C.  DISCUSSION

Here, as set forth below, all four *Agiwal* factors applicable to a Rule 37 motion for sanctions have been met.

### 1.  *Willfullness*

"Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Thompson v. Jam. Hosp. Med. Ctr.*, No. 13 CIV. 1896, 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015) (internal citation omitted); *accord Davis v. Artuz*, No. 96 CIV. 7699(GBD), 2001 WL 50887, at *3 (S.D.N.Y. Jan. 19, 2001) (citing *Baba v. Japan Travel Bureau Int'l, Inc.*, 165 F.R.D. 398, 402-03 (S.D.N.Y. 1996)). Based on Mr. Netter's communications with opposing counsel and the Court's colloquy with Mr. Netter at the March 16 hearing, I find that Mr. Netter was aware of his discovery obligation, the March 17, 2026 Discovery

Order, and knew that timely and complete compliance was expected. Mr. Netter's ongoing non-compliance with his duty to provide discovery has persisted for months, well beyond the close of discovery, and despite an opportunity to comply. *See* ECF No. 81 (Order dated March 5, 2026); ECF No. 87 (March 17, 2026 Order); ECF No. 92 at 5:2-7:21 (Counsel for Plaintiff setting forth efforts to meet and confer to resolve outstanding discovery issues since September 2025). Mr. Netter violated the Order, despite a warning of the possibility of sanctions. Mr. Netter has offered no reasonable excuses for his failure to comply with the Order and has offered no willingness to comply with the Order. Given the clarity and simplicity of the Court's Orders and the absence of any indication that Mr. Netter's noncompliance is the result of factors beyond his control, it is fair to conclude that his misconduct is willful. The Court finds that this *Agiwal* factor is established.

### 2. *Warning of the Consequence of the Non-Compliance*

Plaintiff filed a Motion to Compel in February 2026. ECF No. 73. A hearing was held on March 16, and Mr. Netter was warned on the record of possible sanctions under Fed. R. Civ. P. 37. ECF No. 92. The Order granting the motion to compel also contained a warning regarding Rule 37 sanctions. ECF No. 87. On May 29, 2026, the Court granted Plaintiff's Motion to Compel depositions answers from Mr. Netter for improperly refusing to answer questions during his February 5, 2026, deposition, and he was again reminded of Rule 37 sanctions for failure to comply with the Federal Rules of Civil Procedure. ECF No. 102. The Court finds that this *Agiwal* factor is established.

### 3. *Duration of the Non-Compliance*

A careful review of the record demonstrates a months-long campaign of noncompliance with discovery obligations by Mr. Netter.

Here, Mr. Netter was served with Requests for Production and Interrogatories in July 2025, while represented by counsel. ECF No. 73 at 3, 9. Following an October 15, 2025 teleconference, I entered an order requiring all fact and expert discovery in this matter to be completed by February 28, 2026. ECF No. 63. Mr. Netter was also ordered to file a *pro se* appearance, or successor counsel to file an appearance on Mr. Netter's behalf, by November 11, 2025. *Id.* Mr. Netter was ordered to complete his rolling production of documents in response to Plaintiff's Requests for Production by November 30, 2025. *Id.* On October 24, 2025, the Court denied Mr. Netter's Motion to Quash, stating in relevant part, "that in light of what [Mr.] Netter has actually offered to produce, [and] what he has refused to produce in response to SEC's requests for production, and his failure thus far to produce *any* document during this litigation or even to propose a date by which he would do so, it is unlikely the Commission could get the documents from [Mr.] Netter." ECF No. 67. Plaintiff's counsel stated at the hearing on the Motion to Compel that they "spent a considerable amount of time at the [February 5, 2026 Deposition of Mr. Netter] talking about the absence of the signature page, the absence of Exhibit A, [and] trying to get answers to the interrogatories. Even in that testimony, Mr. Netter had agreed to produce further information within ten days. That didn't happen." ECF No. 92 at 6:6-6:12. Despite repeated efforts to meet and confer the parties were unable to resolve outstanding discovery issues. When Plaintiff filed its Motion to Compel on February 19, 2026, after attempting for months to persuade Mr. Netter to cooperate, he did not produce the outstanding discovery. ECF No. 73. The motion to compel was granted, after an opportunity to be heard, directing Mr. Netter to complete certain steps by certain dates. ECF No. 87. Still, Mr. Netter has not complied with the March 17, 2026 Order.

In sum, Mr. Netter's conduct amounts to a months-long campaign of noncompliance that weighs in favor of a greater sanction. *See Embuscado v. DC Comics*, 347 F. App'x 700, 700-01

(2d Cir. 2009) (affirming terminating sanctions in case involving three months of noncompliance); *Gurvey v. Cowan, Liebowitz & Lathman, P.C.,* No. 06 Civ. 1202 (LGS)( HBP), 2014 WL 715612, at *6 (S.D.N.Y. Feb. 25, 2014) (finding noncompliance that "has lasted for months and is still ongoing" to weigh in favor of sanctions). The Court finds that this *Agiwal* factor is established.

### 4. *Efficacy of Lesser Sanctions*

As discussed above, a party's failure to obey an order compelling discovery may justify disciplinary measures available under Fed. R. Civ. P. 37. This rule provides a range of possible sanctions. "The mildest is an order to reimburse the opposing party for expenses caused by the failure to cooperate. More stringent are orders striking out portions of the pleadings, prohibiting the introduction of evidence on particular points and deeming disputed issues determined adversely to the position of the disobedient party. Harshest of all are orders of dismissal and default judgment." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir. 1979); *Seena Int'l, Inc. v. One Step Up, Ltd.,* No. 15CV01095PKCBCM, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016) ("Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled.").

"Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). There is no question that the second requirement is met. The sanctions sought are narrowly tailored to the Interrogatories and Requests for Production that were the subject of the Motion to Compel.

The "severity of sanction must be commensurate with the non-compliance." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 140 (2d Cir. 2007). "A court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future." *Grammar v. Sharinn & Lipshie, P.C.,* No. 14-CIV.-6774 (JCF), 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016) (citing *Hawley v. Mphasis Corp.,* 302 F.R.D. 37, 46 (S.D.N.Y. 2014)). Severe sanctions such as dismissal and default judgment are to be applied sparingly, where no other sanction will suffice. *See Agiwal*, 555 F.3d at 302. However, a "district court is not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Shcherbakovskiy v. Seitz*, 450 F. App'x. 87, 88 (2d Cir. 2011) (citing *S. New England Tel. Co. v. Glob. NAPs, Inc.*, 624 F.3d 123, 148 (2d Cir. 2010)).

Plaintiff seeks an order: (1) prohibiting Mr. Netter from using any documents produced by him after the Court's March 31, 2026 deadline to support any of his claims or defenses, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii); and (2) directing that certain facts be taken as established, as the Commission has claimed in its Complaint[3] and striking Mr. Netter's denial in his answer pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i) and (iii). ECF No. 97 at 7. Plaintiff states that "[Mr.] Netter's noncompliance, both for his document production and his interrogatory answers, center on discovery requests by the Commission related to this claim." *Id.*

---

[3]    The Complaint at paragraph 42 states,

>      [Mr.] Netter personally benefited from Fund's activist efforts. During the period [Mr.] Netter was personally invested in QUMU and Dallas News Corporation, the Fund paid over $90,000 in legal expenses in connection with activist efforts related to these companies. [Mr.] Netter did not share in those expenses or disclose to investors his conflicts that resulted from his personal investments in QUMU and Dallas News Corporation.

ECF No. 1 at ¶ 42.

As to the question of whether imposition of preclusion sanctions are "just", the Supreme Court has indicated that this inquiry involves "general due process restrictions on the court's discretion", and the record should be reviewed to ascertain whether the district court abused its discretion. *See Ins. Corp. of Ireland*, 456 U.S. at 707–08 (Court reviewed events leading up to sanctions); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir. 1989) (reviewing the record); *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176-77 (2d Cir. 1988) (same); *Jones v. Niagara Frontier Transp. Auth.,* 836 F.2d 731, 735 (2d Cir. 1987) (same); *Cine Forty–Second Street Theatre Corp.,* 602 F.2d at 1068 ("sanctions must be weighed in light of the full record in the case"). If monetary sanctions are not sufficient, "[m]ore stringent" orders may be issued, including "orders striking out portions of the pleadings, prohibiting the introduction of evidence on particular points and deeming disputed issues determined adversely to the position of the disobedient party." *Cine Forty–Second St. Theatre Corp.,* 602 F.2d at 1066.

The Court has carefully considered whether a monetary sanction would be sufficient to address Mr. Netter's non-compliance and finds that, on this record, a preclusion sanction is warranted. *Id.* As the record in this case demonstrates, a lesser monetary sanction will not address Mr. Netter's continuing willful violation of the Court's discovery order and obstruction of the discovery process. Despite being warned with the prospect of sanctions, and given an opportunity to comply with his discovery obligation and Court Order, Mr. Netter did not comply. Nor did he file an objection to the Order, or seek additional time to comply. And still Mr. Netter remains defiant of his obligations and of this Court's Order. Simply put, Mr. Netter failed to follow the clear directives of the March 17 Order and has not identified any facts that would substantially justify his discovery intransigence, nor any circumstance that would make the entry of sanctions unjust.

14

Mr. Netter maintains that he has complied with the Court's March 17, 2026 Order. What is clear from his response is that he did not. For example, he raises a vague work product privilege but served no privilege log as ordered by the Court. ECF No. 101 at 2. Similarly, Mr. Netter did not comply with the order to "provide a copy of the 'Exhibit A' referenced in his Interrogatory answers, containing all information promised in each Interrogatory answer that references that Exhibit (interrogatories 3 and 5)." ECF No. 87. Rather, he references his deposition testimony from February 5, 2025, without citation to the deposition transcript, describing "exactly what Exhibit A was, an inventory of accounts, but only to a certain date." ECF No. 101 at 2. He further stated that he read the order "to make a new Exhibit A . . . [and provided] five[] highly detailed outlines . . . [on] April 13, 20, 30, May 15 and 19, 2026", arguing that the outlines demonstrate compliance with the interrogatories and document production. *Id.* at 2-3. The five outlines do not however, comply with the Court's Order. Again, Mr. Netter contends that prior counsel produced Mr. Netter's accounts and non-Dolphin accounts from 2016-2023, prior to the filing of the Complaint and he provided a supplemental production pursuant to the Court's Order for 2023-2025 and several months of 2026. *Id.* at 2-4. Nevertheless, he maintains that "[b]ecause all the non-South Dakota accounts have moved (mostly from JPM) claims of prior account number[s] are no longer relevant." *Id.* at 4. Mr. Netter has waived his relevance argument at this late date. He further seeks leave "to demonstrate compliance [with] the court and or meet and confer with the Commission to see specific claims of deficiency." *Id.* The request is denied. He further argues that Plaintiff has not met the burden of the meet and confer under the rules. The Court has previously found that Plaintiff made a good faith effort to meet and confer with Mr. Netter, and will not revisit the argument here. ECF No. 87. Throughout his opposition brief, Mr. Netter offers arguments why the discovery requests are faulty and/or why his production or responses are sufficient; referenced

attached documents that were not submitted; does not possess Bates stamped documents; states that prior counsel provided responsive documents; and contends that delays in production were not caused by him. ECF No. 101. However, he never sought an extension of the Court ordered deadline and admits he has not provided interrogatory responses "signed under oath, consistent with Fed. R. Civ. P. 33(b)" as ordered. ECF No. 87; ECF No. 101 at 8 ("[Mr.] Netter is positioned to make the certification as this court ordered."); *id.* at 11 ("[Mr.] Netter is ready to make the certification with respect to document requests directed at [Mr.] Netter.").

"The harshest sanctions available are preclusion of evidence and dismissal of the action," which "should be imposed only in rare situations," when necessary "to achieve the purpose of Rule 37 as a credible deterrent." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). *See also Ebewo v. Martinez,* 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution"). Moreover, the Court finds that the Commission's request is measured and targeted to the particular interrogatories and requests for production at issue. *Ins. Corp. of Ireland*, 456 U.S. at 707 (noting that Rule 37(b)(2) requires that the "sanction [is] specifically related to the particular 'claim' which was at issue in the order to provide discovery.").

The Court finds that this *Agiwal* factor is established. Accordingly, Mr. Netter is precluded from availing himself of documents he produced after the Court's March 31, 2026 deadline to support his claims or defenses; and it is directed that the facts set forth at paragraph 42 of the Complaint are taken as established and Mr. Netter's denial to paragraph 42 in his answer is stricken, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i-iii).

### D. CONCLUSION

For the reasons stated, Plaintiff's Motion for Discovery Sanctions (**ECF No. 97**) is **GRANTED.** Defendant Mr. Netter's Motion for an Evidentiary Hearing (**ECF No. 101)** is **DENIED.** *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.,* 131 F.4th 102, 108 (2d Cir. 2025) (finding that "the district court did not abuse its discretion in deciding that the record before it was sufficient to decide the motion without a hearing.").

The Clerk of the Court is respectfully directed to mail a copy of this ruling to *pro se* Defendant Mr. Netter and note the mailing on the docket.

This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. *See* 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same).

*/s/ Maria E. Garcia, USMJ*
Hon. Maria E. Garcia
United States Magistrate Judge

17